IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ISAAC COOPER,
      Plaintiff,

vs.                                        Case No.: 5:07cv108/RS/EMT

MS. SEXTON, et al.,
      Defendants.
_____/

**<u>ORDER</u>**

      Plaintiff, a Florida inmate proceeding pro se, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1).  Leave to proceed in forma pauperis has been granted (Doc. 6).  From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to some or all of the named Defendants.  Therefore, the court will allow Plaintiff an opportunity to clarify his allegations in an amended complaint.[1]

      Plaintiff was a prisoner housed at Gulf Correctional Institution ("Gulf CI") at all times relevant to this action (*see* Doc. 1 at 2).  Plaintiff has named numerous Defendants in three general categories:  (1) medical personnel, including several nurses and a doctor at Gulf CI; (2) Florida Department of Corrections ("DOC") employees, including the warden and assistant warden at Gulf CI and other DOC employees who handle inmate grievances; and (3) the State of Florida (*see id.* at 1, 2–continuation page).  Plaintiff alleges that in September 2006 he was hit in the face by another inmate (*see id.* at 7).  Plaintiff states that he suffered injuries to his face and eye and was sent to the medical department for evaluation by a nurse (*see id.*).  The nurse treated Plaintiff by providing him

_____

[1]The court notes that Plaintiff has filed a memorandum and several exhibits with his complaint (*see, e.g.*, Doc. 1, Exs. A, B).  In amending his complaint, Plaintiff is advised that he should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his amended complaint.  The court will notify Plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment.

with an ice pack and Ibuprofen (*see id.*).  Plaintiff was then sent to administrative confinement pending an investigation of the incident with the other inmate (*see id.*).  Plaintiff continued to experience pain in his face, nose, and teeth, and his nose was occasionally bleeding and oozing yellow puss; therefore, Plaintiff initiated several sick calls over the next few weeks and was evaluated by medical staff at Gulf CI (*see id.*).  In each instance, Plaintiff alleges that medical staff failed to adequately treat him even though staff took x-rays (which revealed no fractures to his face or nose), provided Plaintiff with pain medication, and otherwise treated the injuries he sustained to his nose and face (*see id.*).[2]  Dissatisfied with the quality of his medical care, Plaintiff filed grievances with Gulf CI and the DOC (*see id.*).  Plaintiff's grievances were denied, and he was advised to continue to initiate sick calls if he needed further medical treatment (*see id.*).  Plaintiff alleges that he continues to experience problems with his nose, such as trouble breathing and occasional bleeding, and has had severe headaches since his injury (*see id.* at 7, continuation page).  Despite experiencing continued health problems, Plaintiff alleges that he has not been seen by a doctor (even though the grievances attached to his complaint clearly show that he was seen by a Dr. Gilo, who he has also named as a Defendant in this action) (*see id.* at 7, continuation page; *id.*, Ex. B at 10 (record indicating that Plaintiff was seen by Dr. Gilo on October 25, 2006)).  Plaintiff alleges that Defendants violated his rights under the Constitution by failing to provide him with adequate medical care (*see id.* at 8).  For relief, Plaintiff demands compensatory damages of not less than $250,000.00 and not more than $500,000.00, "as well as proper medical care and treatment of his injuries to the left side of his nose and face" (*id.* at 9).

Initially, Plaintiff must clarify his claims in this action.  For example, Plaintiff names several nurses, a doctor, several Gulf CI employees, and several DOC employees in this matter, but does not state how each individual caused him any constitutional injury.  In fact, in the "Statement of Facts" section of his complaint, Plaintiff only identifies Defendant Sexton, A.R.N.P., individually (*see id.* at 7, continuation page).  In amending his complaint, Plaintiff is advised that he should name as Defendants only those individuals who harmed him, and he should clearly state in his statement

---

[2]The court notes that one grievance indicates that Plaintiff was also treated for injuries to his back and not for injuries to his nose or face (*see id.*, Ex. B at 7).

of claims what conduct each named Defendant engaged in that caused injury to him.  If Plaintiff cannot state how a particular Defendant injured him, Plaintiff should drop that person from his amended complaint.

Next, it is well established that a state is not a person within the meaning of 42 U.S.C. § 1983.  Will v. Mich. Dep't. of State Police, 491 U.S. 58, 64, 109 S. Ct. 2304, 2308, 105 L. Ed. 2d 45 (1989).  Therefore, in amending his complaint Plaintiff should delete the State of Florida as a Defendant in this action.

With respect to his substantive claim, Plaintiff has failed to state a constitutional claim of inadequate medical treatment.  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  *Id*.  (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)).  Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment.  *Id*. (citations omitted).  Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077, 121 S. Ct. 774, 148 L. Ed. 2d 673 (2001).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'"  *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements.  *Id.* at 1258.  As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need."  Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").  In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06, 97 S. Ct. at 291–92 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference."  Estelle, 429 U.S. at 105, 97 S. Ct. at 291. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).  "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care.  Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference.  Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.  Harris v. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

In the instant case, Plaintiff does not allege a complete denial of medical care; rather, he questions the adequacy of the care received.  Plaintiff admits that he was able to see medical personnel upon request and, during each visit, he was examined by a nurse or a doctor.  Plaintiff also states that the medical personnel at Gulf CI provided treatment for his injuries, including x-rays, ice

packs, pain medications, and other treatment.   Plaintiff apparently believes that the medical personnel did not do enough to remedy his condition.   This fact is insufficient to establish a constitutional violation.   Unless Plaintiff alleges facts showing that individual nurses or doctors knew that their failure to provide treatment placed Plaintiff at serious risk of substantial harm, Plaintiff cannot establish a constitutional claim.

With respect to the Gulf CI employees and the DOC employees who handled Plaintiff's grievances, Plaintiff apparently seeks to hold them liable on a respondeat superior theory of liability. Plaintiff is advised that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).   Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"   *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"   Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).   Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.   Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).   Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving

inmates of their constitutional rights." <u>Tittle v. Jefferson County Com'n</u>, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  *See* <u>Harris v. City of Marion</u>, 79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." <u>Cottone</u>, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege that any of the Gulf CI or DOC Defendants personally participated in the alleged unconstitutional conduct; he alleges only that they denied his grievances and/or appeals.  Plaintiff does not allege that they directed any subordinate to act unlawfully or knew that a subordinate would act unlawfully and failed to stop the subordinate from doing so.  Nor does Plaintiff allege the existence of a history of widespread inadequate medical care that put these Defendants on notice of the need to correct the alleged deprivation, and that they failed to do so.  Likewise, Plaintiff does not allege the existence of a custom or policy of the DOC or Gulf CI that resulted in deliberate indifference to Plaintiff's constitutional rights.  Therefore, unless additional facts exist and are alleged, Plaintiff should drop the Gulf CI and DOC employees from his amended complaint.

Plaintiff should carefully review the foregoing.  If Plaintiff wishes to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "Amended Complaint."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint.  Plaintiff's request for relief should be limited to only that

which he could recover if he succeeds on his claims.  Finally, Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1.     The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983.  This case number should be written on the form.

2.     Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "Amended Complaint."

3.     Plaintiff's failure to file an amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this 25th day of October 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**